UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

JENNIFER ARNOLD, as
Mother and Next Friend of
SARAH ARNOLD, a Minor

       Plaintiff,
vs.

CARNIVAL CORPORATION,
d/b/a CARNIVAL CRUISE LINES, INC.,
CANOPY MUNDO NOGALITO TOUR,

       Defendants.
_____/

## COMPLAINT

**COMES NOW**, the Plaintiff, **JENNIFER ARNOLD, as Mother and Next Friend of SARAH ARNOLD, a Minor**, by and through undersigned counsel, and sues the Defendants, CARNIVAL CORPORATION, d/b/a CARNIVAL CRUISE LINES, INC., and CANOPY MUNDO NOGALITO TOUR and further states as follows:

### GENERAL ALLEGATIONS

1. This is a cause of action which is brought in the District Court for the Southern District, Florida pursuant to 28 U.S.C. 1333 and the forum selection clause of Plaintiff's passenger cruise ticket with Defendant. The cause of action is in excess of $75,000.00. There is diversity of citizenship. Plaintiff is a citizen and resident of the state of California.

3. Defendant CARNIVAL CORPORATION, d/b/a CARNIVAL CRUISE LINES, INC., (hereinafter "CARNIVAL") is, upon information, a foreign/Panamanian corporation, which is licensed to do business in Florida as a cruise line. Defendant CARNIVAL's base of operations is in Miami, Dade County, Florida. Defendant CANOPY MUNDO NOGALITO TOUR is a foreign corporation whose base of operations is in Puerto Vallarta, Mexico.

-1-

4. Plaintiff has complied with all conditions precedent to filing this suit or said conditions do not apply.

5. At all times material, Plaintiff was a fare-paying passenger aboard the CARNIVAL SPLENDOR, a cruise ship which was owned and/or operated by Defendant CARNIVAL.

6. On or about February 23, 2012, CARNIVAL promoted, vouched for, recommended and sold Plaintiff a shore excursion tour in Puerto Vallarta, Mexico as part of Plaintiff's cruise with CARNIVAL. The tour was listed in a CARNIVAL brochure on board the vessel under "Sightseeing Tours" and was called the "City & Tropical Jungle Escape." The tour is more specifically described in a section of the brochure attached as Exhibit "A" to the complaint. Although the brochure specifically stated that a nature walk was optional and that passengers "may" take a nature walk, all passengers, including the Plaintiff, were told they had to exit the tour bus and take a walk in the jungle.

7. The tour in Puerto Vallarta was operated by an independent contractor named CANOPY MUNDO NOGALITO TOUR selected by CARNIVAL.

8. CARNIVAL is engaged in the business of providing a cruise vacation experience to the public. Part of this experience is the participation in shore excursions which are sold on board the cruise ship to passengers like Plaintiff. The more expansive and "safe" the shore excursions offered by the cruise line, the more they will attract passengers to purchase shore excursion tickets during their Carnival cruise.

9. CARNIVAL made specific representations onboard the vessel by employees at its Shore Excursion Desk where these tours are sold to passengers about the "competent" and "reputable" shore excursion operators that are selected by CARNIVAL to operate the tour selected by Plaintiff. At all times material hereto, the Defendant CARNIVAL represented expressly under these circumstances to the Plaintiff herein that the shore excursion operator for

the tour purchased by Plaintiff, was competent and able to safely, and properly provide a safe sightseeing shore excursion experience.

11. CARNIVAL made these representations to Plaintiff with the intention that she would rely upon it and purchase the tour. Plaintiff specifically inquired about the safety of the tour as Plaintiff was traveling with her husband and two minor children.

12. Defendant CARNIVAL knew or should have known through the use of ordinary reasonable care in the circumstances that several of its own passengers and passengers of other cruise lines had been seriously injured in Puerto Vallarta due to the high crime rate there. Furthermore, Defendant CARNIVAL knew or should have known through the use of ordinary reasonable care that a security guard or police presence was required on tours in this area and that such tours should only be conducted in the morning hours.

13. In fact, Princess Cruises, a cruise line owned by CARNIVAL, had suspended all stops at Puerto Vallarta, Mexico the previous fall due to the ongoing drug war. Prior to the cruise, a travel advisory had been issued by the State Department concerning tourists traveling to Puerto Vallarta, Mexico.

14. The jungle tour to El Nogalito in the foothills of the Sierra Madre mountains is supposed to be conducted only in the morning and is only supposed to be conducted with a security guard or police officer accompanying the tour, according to Puerto Vallarta Mayor Salvador Gonzalez Resendiz who gave a statement regarding the incident hereinafter alleged. The tour in this part of the jungle in Puerto Vallarta carries with it a grave risk of serious bodily harm if not conducted in a safe and proper manner.

15. Defendant CARNIVAL chose or selected the Defendant CANOPY MUNDO NOGALITO TOUR which, upon information and belief, would be the operator of the City and Tropical Jungle Escape tour. The excursion operator and CARNIVAL shared in the revenue collected for the tour, with the lion's share of the revenue going to CARNIVAL.

16.     Defendant CARNIVAL, through its onboard personnel, specifically employed for this purpose, organized the excursion and took payment from passengers and Plaintiff herein, charging the cost of the tour to Plaintiff's onboard charge account. When the time for the excursion arrived, CARNIVAL made an announcement on the ship and directed passengers and Plaintiff to the tour where she connected with the tour operator with the other passengers who had purchased the tour.

17.     In making the representation that the tour was "constantly upgraded" to offer the "best possible" excursion possible, and that the tour was "safe", CARNIVAL made a false representation, which was false at the time it was made, was known by Defendant CARNIVAL to be false at the time it was made, and was made with the intention that passengers such as the Plaintiff rely upon the representation to purchase the tour. Plaintiff did rely on the misrepresentation and was damaged thereby.

18.     The minor Plaintiff was only twelve years old at the time of this incident. She was seriously injured while taking the City and Tropical Jungle tour in the afternoon and not in the morning as was recommended, without a security guard or a police officer accompanying nthe tour. The Plaintiff and other passengers on the tour were held up, threatened and robbed at gunpoint by a heavily armed masked gunman who was brandishing a large .45 caliber semi-automatic pistol. Plaintiff was at direct risk of immediate physical and bodily harm from being shot and feared for her life. She then developed a skin rash to her legs and feet from running through the jungle to escape. Thereafter she suffered and continues to suffer severe emotional and psychiatric distress and psychological injury, night terrors and sweats, insomnia, fear of being alone, manifestations of physical injury, all requiring her to be under the care of a psychiatrist and psychologist and required to take prescription psychotropic medication.

18.     In addition, in making the representations that "best possible" excursion was offered, and that it had "constantly upgraded" the shore excursion operator and that the tour was

in fact "safe" for Plaintiff's children, Defendant CARNIVAL assumed a duty to act with great care in regard to the Plaintiff and the matter of selecting the tour operator for the City and Tropical Jungle Escape Tour. In the alternative, or in addition thereto, Defendant CARNIVAL owed Plaintiff a duty of reasonable, ordinary care in the circumstances.

19. The tour operator, which conducted the tour on which Plaintiff was injured, was incompetent or negligent in the following particulars:

    a.) The tour operator's employees, agents or servants were not properly trained or experienced, and/or;

    b.) There was inadequate supervision of passengers such as Plaintiff traversing the area of the tour, and/or;

    c.) There was no adequate warning given to passengers such as Plaintiff of the high crime rate in Puerto Vallarta, and/or;

    d.) There was no armed security or police accompanying the tour, and/or;

    e.) The tour was conducted in the afternoon and not the morning, and/or;

    f.) The tour employees forced the tour passengers off the tour bus and into the jungle where they were robbed, and/or;

    g.) The tour operator selected an area for the tour which was improper and unsafe; and/or

20. As a result of the failures by Defendant CARNIVAL to use reasonable care in the selection/retention of the City and Jungle Escape Tour, and its misrepresentations to Plaintiff about the selection process and competency of the particular shore excursion operator, the Plaintiff was seriously injured as more specifically alleged in Paragraph Seventeen.

## COUNT ONE - NEGLIGENT SELECTION OF THE SHORE EXCURSION OPERATOR
## V. CARNIVAL

21. Plaintiff reavers and realleges Paragraphs One through Twenty as if set forth herein.

22. Defendant CARNIVAL made certain specific representations to Plaintiff to induce her to purchase the tour on which she was injured, including that care had been taken to select the finest tour possible and that the tour was safe for children.

23. At all times material, Defendant owed Plaintiff a duty of reasonable care in the circumstances in selecting the shore excursion tours it sold to its passengers and Plaintiff herein.

24. Notwithstanding Defendant's duty as aforesaid, Defendant breached its duty by unreasonably:

    a.) Failing to use reasonable care in the circumstances in selecting the tour on which Plaintiff was injured in regard to the competency, quality, training, and experience of the tour's employees, and/or;

    b.) Failing to use great care in the circumstances, which it had assumed to do, in selecting the tour on which Plaintiff was injured in regard to the competency, quality and training and experience of the tour's employees, and/or;

    c.) Failing to use reasonable care in the circumstances in selecting the tour on which Plaintiff was injured in regard to the competency, quality, training and experience of the tour's employees, and/or the safety of the tour or tour procedures, and/or;

    d.) Failing to properly train its employees in how to properly select a shore excursion tour which involved an inherently dangerous area or location of the tour, or an activity which Defendant knew or should have known

-6-

through the use of ordinary care that other passengers could be seriously injured participating in similar tours, and/or;

e.) Failing to use reasonable care in the circumstances in investigating whether information it was given regarding the procedures and guides available by the tour operator on which Plaintiff was injured was, in fact, true and/or;

f.) Failing to use reasonable care in the circumstances in requiring that the tour operator have reasonably safe procedures and trained and experienced security personnel or policemen available for the tour on which Plaintiff was injured.

g.) Failing to conduct its own inspection of the shoreside excursion contractor's operations after prior reports and incidents of safety issues were known, or should have been known, in Puerto Vallarta in general and the jungle area in specific, by the Defendant.

25. As a result of the foregoing, the Plaintiff was injured when she participated in a tour selected for her by CARNIVAL.

26. At all times material, CARNIVAL either created the dangerous conditions of which Plaintiff complains and/or the dangerous conditions existed for a sufficient period of time that Defendant had constructive knowledge of the dangerous conditions and/or Defendant failed to reasonably inquire into the competency of the shore excursion operator prior to selection of the tour operator and/or Defendant had actual knowledge of the incompetency of the shore excursion operator hereinbefore alleged in Paragraph Nineteen to have caused or contributed to causing Plaintiff's injury and/or the incompetency of the shore excursion operator hereinbefore alleged in Paragraph Nineteen to have caused or contributed to causing Plaintiff's injury existed for a sufficient period of time prior to selection that Defendant had constructive knowledge of

the incompetency.

27. At all times material, Plaintiff acted with due care for her own safety.

28. As a result of the negligence of the Defendant as aforesaid, the Plaintiff was injured in and about her body and extremities and suffered emotional pain and distress, a skin rash on her legs and feet, mental and emotional anguish and psychiatric and psychological disability and injury therefrom; incurred medical expense and physical handicap and a loss of the ability to enjoy life; suffered a loss of earning capacity, suffered an aggravation of known and/or unknown pre-existing conditions, suffered a loss of enjoyment of the cruise and a loss of ability to enjoy life. Said personal injuries are permanent and/or continuing in nature and the Plaintiff shall continue to suffer such losses and impairments in the future.

WHEREFORE, Plaintiff demands judgment from Defendant for damages, pre-judgment interest and costs. Jury trial is demanded.

## COUNT TWO - NEGLIGENT RETENTION OF THE SHORE EXCURSION OPERATOR V. CARNIVAL

29. Plaintiff reavers and realleges Paragraphs One through Twenty as if set forth herein.

30. Defendant CARNIVAL made certain specific representations to Plaintiff to induce her to purchase the tour on which she was injured, including that care had been taken to select the best possible tour and that the tour was safe for children.

34. At all times material, CARNIVAL owed Plaintiff a duty of reasonable care in the circumstances in retaining the shore excursion tour operators operating the tours CARNIVAL sold to its passengers and Plaintiff herein.

35. Notwithstanding Defendant's duty as aforesaid, Defendant breached its duty by unreasonably:

a.) Failing to use reasonable care in the circumstances in retaining the tour on which Plaintiff was injured in regard to ascertaining the competency, quality, training, and experience of the tour's employees, and/or;

b.) Failing to use great care in the circumstances, which it had assumed to do, in retaining the tour on which Plaintiff was injured in regard to the competency, quality and training and experience of the tour's employees, and/or;

c.) Failing to use reasonable care in the circumstances in retaining the tour on which Plaintiff was injured in regard to the competency, quality, training and experience of the tour's employees, and/or the safety of the tour or tour procedures, and/or;

d.) Failing to properly train its employees in how to properly retain a shore excursion tour which involved an inherently dangerous activity, or an activity which Defendant knew or should have known through the use of ordinary care that other passengers had been or could be seriously injured participating in similar tours at this specific location, and/or;

e.) Failing to use reasonable care in the circumstances in investigating whether information it was given regarding the procedures and guides available by the tour operator on which Plaintiff was injured was, in fact, true and/or;

f.) Failing to use reasonable care in the circumstances in requiring that the tour operator have reasonably safe procedures and security personnel or police officers available for the tour on which Plaintiff was injured, and/or;

g.) Failing to conduct its own inspection of the shoreside excursion

contractor's operations after prior reports and incidents of safety issues were known, or should have been known, by the Defendant, and/or;

    h.) Failing to conduct an investigation into the shoreside excursion after knowing that Princess Cruises had stopped sailing to Puerto Vallarta over concerns about the crime rate and drug war there, and/or;

36. As a result of the foregoing, the Plaintiff was injured when she participated in a tour selected for her by CARNIVAL.

37. At all times material, CARNIVAL either created the dangerous conditions of which Plaintiff complains and/or the dangerous conditions existed for a sufficient period of time that Defendant had constructive knowledge of the dangerous conditions and/or Defendant failed to reasonably inquire into the competency of the shore excursion operator and/or Defendant had actual knowledge of the incompetency of the shore excursion operator hereinbefore alleged in Paragraph Nineteen to have caused or contributed to causing Plaintiff's injury and/or the incompetency of the shore excursion operator hereinbefore alleged in Paragraph Nineteen to have caused or contributed to causing Plaintiff's injury existed for a sufficient period of time prior to selection that Defendant had constructive knowledge of the incompetency.

38. The Defendant is aware that its passengers on tours in other locations in the Caribbean such as Nassau in the Bahamas or St. Thomas in the U.S. Virgin Islands have been locations where cruise ship passengers have been assaulted, robbed or killed prior to February 23, 2012, see, e.g., PEREZ v CARNIVAL CORPORATION, Southern District Case No. 11-cv-21890 and CHAPARRO v. CARNIVAL CORPORATION, Southern District Case No. 11-cv-14047.

39. At all times material, Plaintiff acted with due care for her own safety.

40. As a result of the negligence of the Defendant as aforesaid, the Plaintiff was injured in and about her body and extremities and suffered emotional pain and distress, a skin

rash on her legs and feet, mental and emotional anguish and psychiatric and psychological disability and injury therefrom; incurred medical expense and physical handicap and a loss of the ability to enjoy life; suffered a loss of earning capacity, suffered an aggravation of known and/or unknown pre-existing conditions, suffered a loss of enjoyment of the cruise and a loss of ability to enjoy life. Said personal injuries are permanent and/or continuing in nature and the Plaintiff shall continue to suffer such losses and impairments in the future.

WHEREFORE, Plaintiff demands judgment from Defendant for damages, pre-judgment interest and costs. Jury trial is demanded.

## COUNT THREE – NEGLIGENT FAILURE TO WARN OF A DANGEROUS CONDITION V. CARNIVAL

41. Plaintiff reavers and realleges Paragraphs One through Twenty as if fully set forth herein.

42. Defendant CARNIVAL made certain specific representations to Plaintiff to induce him to purchase the tour on which he was injured, including that tour was "safe" and that the tour had been "constantly upgraded" to provide the "best selection possible."

43. At all times material, CARNIVAL owed Plaintiff a duty of reasonable care in the circumstances which includes a duty to warn of dangers known to the carrier in places where a passenger is invited to, or may reasonably be expected to visit.

44. Notwithstanding Defendant's duty as aforesaid, Defendant breached its duty by unreasonably:

    a) Failing to warn of the incompetency of the tour operator with regards to the City and Jungle Escape Tour as expressly provided in paragraph 19 above; and/or

  b) Failing to warn Plaintiff of the dangers of and the conditions under which the tour would be conducted, including, but not limited to the lack of armed security or police officers accompanying the tour; and/or

  c) Failing to warn of the improper time of the tour in that the tour was supposed to be conducted in the morning and not in the afternoon; and/or

  d) Failing to properly and safely warn Plaintiff about the high crime rate in Puerto Vallarta in general and the El Nogalito jungle area in the foothills of the Sierra Madre mountains in particular.

45. As a result of the foregoing, the Plaintiff was injured when she participated in a tour selected for her by CARNIVAL.

46. At all times material, CARNIVAL knew or should have known of a) the incompetency of the shore excursion operator and/or b) the unsafe area selected for the jungle tour and/or c) the inappropriate time of the tour and/or d) the lack of a security guard or a police officer on the tour on which Plaintiff was injured.

47. At all times material, Plaintiff acted with due care for her own safety.

48. As a result of the negligence of the Defendant as aforesaid, the Plaintiff was injured in and about her body and extremities and suffered emotional pain and distress, a skin rash on her legs and feet, mental and emotional anguish and psychiatric and psychological disability and injury therefrom; incurred medical expense and physical handicap and a loss of the ability to enjoy life; suffered a loss of earning capacity, suffered an aggravation of known and/or unknown pre-existing conditions, suffered a loss of enjoyment of the cruise and a loss of ability to enjoy life. Said personal injuries are permanent and/or continuing in nature and the Plaintiff shall continue to suffer such losses and impairments in the future.

WHEREFORE, Plaintiff demands judgment from Defendant for damages, pre-judgment interest and costs. Jury trial is demanded.

## COUNT FOUR - NEGLIGENT MISREPRESENTATION V. CARNIVAL

49.     Plaintiff reavers and realleges Paragraphs One through Twenty as if set forth herein.

50.     Defendant negligently misrepresented material facts to Plaintiff regarding the tour and the competency of the tour operator.

51.     Those misrepresentations, specifically that Carnival constantly upgrades the shore excursion packages to make sure the best possible selections are available and that the tour was "constantly upgraded" so as to provide the "best" shore excursion possible, and that the tour on which Plaintiff was injured was "safe", were made to Plaintiff aboard the vessel by CARNIVAL personnel and in its Welcome Aboard booklet in order to induce Plaintiff to purchase and take the tour.

52.     CARNIVAL also makes representations which provide its passengers, including the Plaintiff to which it markets, the distinct impression that there is no need to worry about the safety of the tour and the competency of the shore excursion operators.  In CARNIVAL's "Welcome Aboard Brochure under "Going Ashore" it represents:

> "Participating in a shore excursion is the best way to get the most out of your visit to each port of call.  It relieves you from having to make your own sightseeing arrangements and gives you the opportunity to see the highlights. **Carnival constantly upgrades the shore excursion packages to make sure the best possible selections are available**." (Emphasis added)

*See* copy of brochure page attached hereto as Exhibit "B."

53.     Additionally, the same representations were made during shore excursion talks held aboard the ship and in common areas on the ship, and by Defendant's employees[1] on board the vessel.

54.     Defendant made these representations with the intent that passengers like the

---

[1] Plaintiff does not know the exact name of the employee who conducted the shore excursion talks or worked at the shore excursion desk aboard the vessel. However, Plaintiff contends that this information will be discovered through discovery and that Defendant is already in possession of this knowledge.

Plaintiff rely on them in deciding whether to purchase tickets to go onboard its cruise ships and in choosing to take the tour on which Plaintiff was injured.

55. The representations made by the cruise line were false and misleading. First, the cruise line does not "constantly upgrade" the shore excursion package offered to this Plaintiff on this cruise and fails to inquire into areas reasonably related to a tour operators competency. Furthermore, CARNIVAL is aware or should be aware of instances in which passengers are injured, robbed at gunpoint, and put in a place of harm because of known dangers in the locale where the Jungle Tour in Puerto Vallarta was conducted and the manner in which this tour was conducted and on other tours in other similarly dangerous locales.

56. At the time the representations were made, Defendant knew or should have known they were false and misleading. Defendant failed to use even reasonable care in the circumstances in selecting the tour operator and also in retaining the tour operator after the incident in Nassau prompted the cancellation of the tour offering, let alone the "great care" or substantially similar language it had represented it had taken.

57. Plaintiff relied on the representations and was injured thereby. Plaintiff relied on the representations made by CARNIVAL and booked the tour. Plaintiff wanted to have a full cruise experience, including the shore excursions which are offered at the different port of calls. The plaintiff relied on the express endorsements of CARNIVAL regarding the safety and competency of the shore excursion operator. The Plaintiff also relied on the representations in the shore excursion brochure that CARNIVAL had "constantly upgraded" the shore excursion operators and felt assured that this was the "best possible" tour available.

58. This reliance was to the detriment of the Plaintiff because the Defendant failed to provide a competent shore excursion operator and failed to provide in its literature warnings and sufficient information about the fact that it fails to properly inquire into the background of tour operators during the selection process and fails to properly select and retain tour operators in

especially dangerous locales like El Nogalito in the foothills of the Sierra Madre mountains of Puerto Vallarta.

59. As a result of the foregoing negligent misrepresentations, the Plaintiff was injured when she was on a tour she purchased from Defendant in reliance on the misrepresentations.

60. The Defendant cruise line's misrepresentation included failure to disclose to the public and the Plaintiff herein the fact that under the cruise line's policies and procedures regarding shore excursion operators that the following failures would be allowed to occur:

    a) Failure to properly select a competent tour operator with great care, or even reasonable care, as the cruise line had represented to the public;

    b) Failure by retaining an incompetent tour operator;

    c) Failure to provide the Plaintiff with a competent tour operator that had been constantly upgraded by CARNIVAL, as the cruise line had represented to the public;

    d) Failure of the cruise line to investigate the operations of a tour operator at a particular location including the time of the tour, the location of the tour and the lack of a security guard or police protection;

    e) Failure of the cruise line to ensure that the obligations of the shore excursion operator, express and implied, in the tour operator contract were fulfilled.

61. As a result of the negligence of the Defendant as aforesaid, the Plaintiff was injured in and about her body and extremities and suffered emotional pain and distress, a skin rash on her legs and feet, mental and emotional anguish and psychiatric and psychological disability and injury therefrom; incurred medical expense and physical handicap and a loss of the ability to enjoy life; suffered a loss of earning capacity, suffered an aggravation of known and/or unknown pre-existing conditions, suffered a loss of enjoyment of the cruise and a loss of ability

to enjoy life. Said personal injuries are permanent and/or continuing in nature and the Plaintiff shall continue to suffer such losses and impairments in the future.

WHEREFORE, Plaintiff demands judgment from Defendant for damages, pre-judgment interest and costs. Jury trial is demanded.

### COUNT V-NEGLIGENCE V. CANOPY MUNDO NOGALITO TOUR

62. Plaintiff reavers and realleges Paragraphs One through Twenty as if set forth herein.

63. Defendant, CANOPY MUNDO NOGALITO TOUR, as the operator of the El Nogalito Jungle Tour, owed Plaintiff as a person who had purchased the Nogalito Jungle tour, a duty of reasonable care in the circumstances.

64. Notwithstanding said duty, Defendant breached same by:

a) Failing to require the presence of a security guard or a police officer on the tour, and/or;

b) Failing to conduct the tour in the morning hours as had been recommended by police and/or local government authorities, and/or;

c) Failing to warn Plaintiff of the dangers inherent in participating on the Nogalito Jungle Tour, and/or;

d) Failing to hire reasonably competent guides to conduct the tour, and/or;

e) Failing to train reasonably competent guides to conduct the tour, and/or;

65. As a result of the negligence of the Defendant as aforesaid, the Plaintiff was injured in and about her body and extremities and suffered emotional pain and distress, a skin rash on her legs and feet, mental and emotional anguish and psychiatric and psychological disability and injury therefrom; incurred medical expense and physical handicap and a loss of the ability to enjoy life; suffered a loss of earning capacity, suffered an aggravation of known and/or unknown pre-existing conditions, suffered a loss of enjoyment of the cruise and a loss of ability

to enjoy life. Said personal injuries are permanent and/or continuing in nature and the Plaintiff shall continue to suffer such losses and impairments in the future.

Dated: February 22, 2012.

                              HOFFMAN LAW FIRM
                              2888 East Oakland Park Boulevard
                              Fort Lauderdale, FL 33306
                              Telephone: (954) 563-8111
                              Fax: (954) 563-8171

                      By: */s/ Paul M. Hoffman, Esq.*
                              PAUL M. HOFFMAN, ESQ.
                              Florida Bar No.: 279897

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2012, I electronically filled the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully Submitted,

BY:  /s/ Paul M. Hoffman, Esq.
     Florida Bar No. 279897

## SERVICE LIST

CASE NO.: 12-21923-CIV-MORENO

| | |
|---|---|
| Paul M. Hoffman, Esquire<br>pmh@paulmhoffmanlaw.com<br>HOFFMAN LAW FIRM<br>2888 East Oakland Park Boulevard<br>Fort Lauderdale, Florida 33306<br>Telephone: (954) 563-8111<br>Facsimile: (954) 563-8171<br>*Attorneys for Plaintiff* | Jerry D. Hamilton, Esquire<br>jhamilton@hamiltonmillerlaw.com<br>Elizabeth A. Martin, Esquire<br>emartin@hamiltonmillerlaw.com<br>HAMILTON, MILLER & BIRTHISEL, LLP<br>150 Southeast Second Avenue, Suite 1200<br>Miami, Florida 33131-2332<br>Telephone: (305) 379-3686<br>Facsimile: (305) 379-3690<br>*Attorneys for Defendant* |